A08A0436. ELLIS v. THE STATE.
(657 SE2d 562)

BLACKBURN, Presiding Judge.

Following a jury trial, Alfonso Ellis was convicted on two counts of child molestation[1] and one count of aggravated sexual battery.[2] He appeals his convictions and the denial of his motion for new trial, arguing that his trial counsel provided ineffective assistance and that the State withheld exculpatory evidence in violation of both his due

---

[8] *Abernathy v. State*, 278 Ga. App. 574, 587 (3) (b) (v) (630 SE2d 421) (2006).

[9] *Canada v. State*, 275 Ga. 131, 133 (2) (562 SE2d 508) (2002).

[1] OCGA § 16-6-4 (a).

[2] OCGA § 16-6-22.2 (b).

process rights under *Brady v. Maryland*[3] and Georgia's reciprocal discovery act.[4] For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, *Davis v. State*,[5] the record shows that in May 2002, nine-year-old Ch. B.'s third-grade teacher brought a visibly upset Ch. B. to the school counselor's office and informed the counselor that Ch. B. needed to speak with her. After a private place to talk was found, Ch. B. told the counselor that Ellis, her mother's boyfriend, had been touching her privates with his hand, had put his finger inside her privates, and had tried to put his privates into her privates. Based on this information, the counselor immediately had Ch. B.'s eight-year-old sister C. B. brought in to speak with her. During that meeting, C. B. told the counselor that Ellis had been touching her privates also. A medical examination conducted a few weeks later indicated that both girls exhibited physical signs consistent with sexual abuse.

Ellis was indicted on one count each of child molestation, aggravated sexual battery, and rape of Ch. B. and was indicted on two counts of child molestation of C. B. At trial, both Ch. B. and C. B. testified that Ellis had sexually abused them. The school counselor testified regarding the day that both girls made their initial outcry to her, and the nurse practitioner who examined the girls testified as to her medical findings. In addition, the State also proffered the testimony of 13-year-old T. F. as similar transaction evidence. T. F. testified that, when she was ten years old, Ellis was her foster mother's boyfriend and that he had sexually abused her by putting his privates into her privates. At the close of the State's evidence, the trial court directed a verdict on one of the counts of child molestation as to C. B. The jury found Ellis guilty on one count of child molestation of Ch. B., one count of aggravated sexual battery of Ch. B., and one count of child molestation of C. B. but was unable to reach a verdict on the count alleging rape of Ch. B.

Subsequently, Ellis obtained new counsel and filed a motion for new trial, arguing that trial counsel rendered ineffective assistance by failing to move for an in camera inspection of T. F.'s (the similar transaction witness) DFCS file. In the motion, Ellis also argued that the State improperly withheld exculpatory evidence, including the results of a sexual abuse medical examination of T. F. and her DFCS file, in violation of *Brady* and the reciprocal discovery act. The trial court held a hearing on the motion, at which time it ordered the State to produce T. F.'s medical report as well as her DFCS file and reserved

---

[3] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).
[4] OCGA § 17-16-1 et seq.
[5] *Davis v. State*, 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005).

ruling pending the review of those documents. After the documents were produced, the trial court held another hearing on the motion for new trial, during which Ellis again argued that trial counsel had performed deficiently and that T. F.'s medical report and DFCS file constituted exculpatory evidence. Specifically, Ellis contended that the medical examination of T. F., conducted a few days after her accusation, found no physical signs of sexual abuse and that T. F.'s DFCS file showed that she had a reputation for dishonesty. The trial court denied Ellis's motion, and this appeal followed.

1. Ellis contends that the trial court erred in denying his claim of ineffective assistance of counsel, arguing that his trial counsel was ineffective in failing to move for an in camera inspection of T. F.'s DFCS file. We disagree.

To establish ineffective assistance of counsel under *Strickland v. Washington*,[6] a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. *Mency v. State*.[7] "Making that showing requires that [Ellis] rebut the strong presumption that [his] lawyer's conduct falls within the wide range of reasonable professional assistance." *Simpson v. State*.[8] We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous. *Rose v. State*.[9]

At the hearing on his motion for new trial, Ellis's appellate counsel questioned trial counsel as to why he did not move the court to subpoena T. F.'s DFCS records for an in camera inspection pursuant to OCGA § 49-5-41 (a) (2), given the fact that such an inspection would have yielded (i) the medical report, which showed that the examination of T. F. found no physical evidence of the sexual abuse she alleged, and (ii) evidence of T. F.'s reputation for dishonesty. Trial counsel responded that his strategy was to attack T. F.'s credibility by implying that she was making "outlandish claims" and that reviewing her DFCS file would have only been a "fishing expedition." With regard to the medical report, trial counsel further testified that while he was aware of the fact that T. F. had been examined and that no physical signs of sexual abuse were found, it was his experience,

---

[6] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[7] *Mency v. State*, 228 Ga. App. 640, 642 (2) (492 SE2d 692) (1997).

[8] *Simpson v. State*, 278 Ga. 336, 337 (2) (602 SE2d 617) (2004).

[9] *Rose v. State*, 258 Ga. App. 232, 234-235 (2) (573 SE2d 465) (2002).

which included numerous child molestation trials, that further questioning on that issue is not necessarily helpful as it is often the case that sexual abuse can occur without yielding physical evidence.

Although trial counsel did cross-examine T. F. at trial, Ellis argues that his attempt to attack T. F.'s credibility would have been more effective if he had moved for an in camera inspection of her DFCS file. However, "[t]he manner in which an attorney attacks the credibility of a witness falls within the ambit of trial tactics." *Washington v. State.*[10] "Trial tactics and strategy, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation omitted.) *Abernathy v. State.*[11] Accordingly, the trial court did not clearly err in finding that Ellis failed to carry his burden of proving his claim of ineffective assistance of counsel.

2. Ellis further contends that the State withheld exculpatory evidence in violation of his due process rights under *Brady* and the reciprocal discovery act. We disagree. *Brady* holds that the suppression by the prosecution of evidence favorable to a defendant is a violation of due process. Supra, 373 U. S. at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (Punctuation omitted.) *Nelson v. State.*[12] See *Nikitin v. State.*[13] In order to prove such a violation, Ellis

> had to show that: (1) the State possessed the information favorable to [Ellis]; (2) [Ellis] did not possess the evidence nor could he obtain it with due diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed.

(Punctuation omitted.) *Pinson v. State.*[14]

Prior to trial, Ellis filed motions requesting that the State provide him with all exculpatory evidence pursuant to *Brady* and the reciprocal discovery act. He now argues that the State violated *Brady* and the reciprocal discovery act by failing to provide him with T. F.'s

---

[10] *Washington v. State*, 276 Ga. 655, 659 (3) (a) (581 SE2d 518) (2003).
[11] *Abernathy v. State*, 278 Ga. App. 574, 587 (3) (b) (v) (630 SE2d 421) (2006).
[12] *Nelson v. State*, 279 Ga. App. 859, 864 (2) (632 SE2d 749) (2006).
[13] *Nikitin v. State*, 257 Ga. App. 852, 854 (1) (572 SE2d 377) (2002).
[14] *Pinson v. State*, 266 Ga. App. 254, 263 (8) (596 SE2d 734) (2004).

DFCS file, which contained information that cast doubt as to her credibility, and, more specifically, by failing to provide the medical report, which found that T. F. exhibited no physical signs of sexual abuse when she was examined a few days after Ellis allegedly molested her. However, the DFCS files "sought by [Ellis] are confidential and access thereto is prohibited except as provided by statute." *Davidson v. State.*[15] See OCGA § 49-5-41. As Ellis even notes in his brief,

> [t]he proper procedure for obtaining access to such records in cases such as the one at bar is to petition the trial court to subpoena the records and conduct an in camera inspection as to whether the records are necessary for determination of an issue before the court and are otherwise admissible under the rules of evidence.

*Davidson,* supra, 183 Ga. App. at 559 (4) (b). See OCGA § 49-5-41 (a) (2). This procedure affords a defendant the ability to obtain exculpatory evidence pursuant to his due process rights while also upholding the State's interest in protecting the confidentiality of DFCS's files. See *Pennsylvania v. Ritchie*;[16] *Honeycutt v. State.*[17] Furthermore, and contrary to Ellis's contentions, the reciprocal discovery act does not provide an independent statutory basis for the discovery of DFCS files. See *Horne v. State.*[18] Thus, given the fact that Ellis did not request an in camera inspection of T. F.'s DFCS file until his appellate counsel did so in his second amended motion for new trial, the State was not obligated to produce the file and did not violate his due process rights under *Brady* or Georgia's reciprocal discovery act by not providing the file earlier.

Moreover, even assuming that the report regarding the sexual abuse medical examination of T. F. was in the State's possession independent of its inclusion in her DFCS file, Ellis has not shown that his failure to obtain the report constituted a *Brady* violation. At the hearing on Ellis's motion for new trial, Ellis's trial counsel testified that he recalled the State's prosecutor mentioning the fact that T. F. had been medically examined shortly after she alleged that Ellis molested her and that the examination found no physical signs of sexual abuse. Thus, the potentially exculpatory medical report's existence was known to Ellis, and he made no showing that he could

---

[15] *Davidson v. State,* 183 Ga. App. 557, 559 (4) (b) (359 SE2d 372) (1987).

[16] *Pennsylvania v. Ritchie,* 480 U. S. 39, 60-61 (III) (C) (107 SC 989, 94 LE2d 40) (1987).

[17] *Honeycutt v. State,* 245 Ga. App. 819, 820 (2) (538 SE2d 870) (2000).

[18] *Horne v. State,* 192 Ga. App. 528, 531 (4) (a) (385 SE2d 704) (1989).

not have obtained it with due diligence. See *Tessmer v. State*;[19] *Pinson*, supra, 266 Ga. App. at 264 (8). In fact, as held in Division 1, supra, Ellis failed to show that his trial counsel performed deficiently in light of his counsel's strategic decision to attack T. F.'s credibility by other means instead of seeking to use the medical report. Accordingly, because no *Brady* violation occurred, the trial court did not err in denying Ellis's motion for new trial on that ground.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JANUARY 31, 2008.

*Sexton, Key & Hendrix, Joseph S. Key*, for appellant.

*Tommy K. Floyd, District Attorney, Sandra G. Rivers, Assistant District Attorney*, for appellee.

---

[19] *Tessmer v. State*, 273 Ga. 220, 225 (6) (539 SE2d 816) (2000).